IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SHEILA DAVIS, *Plaintiff*, v. CITY OF CHARLOTTESVILLE SCHOOL BOARD, ET AL., *Defendants*. | CIVIL ACTION NO. 3:11-CV-00026<br><br>MEMORANDUM OPINION<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

Plaintiff filed a civil rights complaint against the City of Charlottesville School Board (the "School Board" or "CSB") and Warren Mawyer, alleging that Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, were violated when Mawyer assaulted her and the School Board failed to prevent Mawyer's conduct or to respond appropriately. Defendants moved to dismiss, the matter has been fully briefed, and the parties' oral arguments have been heard. As explained herein, I find that Plaintiff's allegations fail to state a claim of sexual harassment under Title VII, and I will grant the motion to dismiss as to that count of the complaint. Regarding the state law claims against both defendants, I will decline, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over such claims, and I will dismiss them without prejudice.

I.

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, I apply the pleading standard established by *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). *See also* Fed. R. Civ. P. 12(b)(6), Fed.

R. Civ. P. 8. Plaintiffs must allege facts that "state a claim to relief that is plausible on its face," *i.e.*, facts that "have nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949. The following long-held rule still stands: "In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs. com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes," *id.* (citing *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949), as do "'unwarranted inferences, unreasonable conclusions, or arguments,'" *id.* (quoting *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n. 26 (4th Cir. 2009).

## II

The following summary represents the facts as alleged in the complaint.[1]

Plaintiff is a woman who "was and is an employee of CSB." Mawyer is a man who "was an employee of CSB" on the relevant dates.

On Friday, December 11, 2009, when Plaintiff and Mawyer were both working at Jackson-Via

---

[1] The facts recited here or introduced elsewhere in this opinion are assumed to be true for the purpose of deciding the motions currently before the court, and are not to be considered factual findings for any purpose other than consideration of the pending motions.

Elementary School, "Mawyer approached [Plaintiff] in the cafeteria and made an abrupt, highly inappropriate but fortunately unsuccessful grab for her breasts with his hands." Plaintiff "was frightened by the physical moves against her, believing that she was about to suffer an outrageous battery." Mawyer "then demanded to know whether [Plaintiff's] breasts are 'real' or not." Plaintiff "responded very negatively" and,

> [r]ight after Mr. Mawyer's attempt to grab [Plaintiff's] breasts ended, the assistant principal of the school, Tracy Daniels, walked in. [Plaintiff] told Dr. Daniels what had just happened. Dr. Daniels did not indicate that she was going to do anything about it. And, to the best of [Plaintiff's] knowledge, Dr. Daniels did not do anything about it.

On the following Monday, December 14, 2009, in the cafeteria, "Mr. Mawyer apparently slipped over to [Plaintiff], and while facing [Plaintiff], he abruptly reached out with his left arm and squeezed her right breast." Mawyer grabbed Plaintiff's breast "against her will." Mayer's actions "frightened her immensely," and Plaintiff "believed that she was the potential victim of a coming rape. . . ." Plaintiff struck Mr. Mayer out of "shock, and to stop the sexual attack and in her mind to prevent a potential rape. . . ."

Plaintiff reported the incident to Dr. Daniels, and "explicitly referred to the earlier incident that she had told Dr. Daniels about on Friday." Plaintiff states her belief that "Dr. Daniels involved the school principal, ElizaBeth McCay," but that "CSB did not react immediately by getting rid of Mr. Mawyer," but instead "transferred him to Charlottesville High School."

Plaintiff "swore out a warrant against Mr. Mayer," the "Commonwealth's Attorney prosecuted the case, and Mr. Mawyer eventually [pleaded] guilty to the assault and battery. . . ." Mawyer "has been ordered to stay away from" Plaintiff.[2]

---

[2] With her complaint, Plaintifff submitted exhibits indicating that Mawyer pleaded guilty to a misdemeanor charge of assault, and was sentenced to a jail sentence of 60 days, which was suspended for a
(continued...)

Plaintiff "complained to the superintendent, Dr. Rosa Atkins, about the decision to keep this man employed, especially near high school girls who could be his victims." Plaintiff adds that she "has discovered since this time that CSB knew or should have known of Mr. Mawyer's inappropriate behaviors with other females before" he assaulted Plaintiff, and that CSB "failed to take appropriate action and enabled him to be in a situation to victimize her."

Count I, against CSB, asserts that Plaintiff "suffered sexual harassment in violation of Title VII." Counts II, III, IV, and V assert against both defendants the torts of battery, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, adding that "CSB is vicariously and strictly liable pursuant to the doctrine of respondeat superior for Mr. Mawyer's torts." Count VI asserts "negligent retention" against CSB.

### III.

Regarding the allegations in Count I of sexual harassment under Title VII, CSB contends that "the factual allegations in the Complaint do not state a plausible claim for relief with respect to the co-worker's actions being either sufficiently severe or pervasive or imputable to the School Board." I agree.

A plausible hostile work environment claim involves offending conduct which was 1) unwelcome, 2) based on Plaintiff's sex, 3) sufficiently severe or pervasive so as to alter the

---

²(...continued)
period of two years. The court also imposed a condition of "no contact whatsoever" with Plaintiff.

While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x. 395, 396–97 (4th Cir. 2006); *see also Gasner v. Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (district court may take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to the complaint).

conditions of her employment and create an abusive work environment, and 4) imputable to her employer. *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006); *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*). Subject to certain affirmative defenses, CSB could be held liable for a hostile work environment created by a supervisor. *See, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However, in a case like the instant case, where the claimed sexual harassment is committed by a co-worker, CSB is liable only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 334.

For the purpose of considering Plaintiff's Title VII claim, the relevant factual allegations concerning the incident on Friday, December 11, 2009, are that Mawyer made an "unsuccessful grab" for Plaintiff's breasts and asked if her breasts were "real," and Plaintiff notified an assistant principal of these events. There are no allegations that Plaintiff had reported any prior experience with Mawyer, and there is only the bare assertion that Plaintiff "has discovered since this time that CSB knew or should have known of Mr. Mawyer's inappropriate behaviors with other females before" these incidents with Plaintiff.

Thus, Plaintiff's allegation that the incident on Friday, December 11, 2009, constituted sexual harassment in violation of Title VII fails in the first instance because it is not imputable to CSB. To be sure, Plaintiff's opposition to the motion to dismiss contends that Plaintiff "strongly suspects and alleges – and has evidence for it that will be shared and developed in discovery – that CSB knew or should have known of Mr. Mawyer's potential dangerousness even before the first time she was assaulted." Plaintiff further contends that "a Title VII plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss." However, even in a Title VII case, a complaint must contain "*factual content* that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949 (emphasis added), and the mere allegation and "suspicion" that CSB might have known of Mawyer's "potential dangerousness" does not suffice to make CSB responsible for sexual harassment under Title VII for Mr. Mawyer's initial "abrupt, highly inappropriate but fortunately unsuccessful grab for [Plaintiff's] breasts."[3] The complaint must express "more than a sheer possibility that a defendant [here, CSB] has acted unlawfully," *Iqbal*, 556 U.S. at ___, 129 S. Ct. at 1949, and "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes," *Nemet Chevrolet, Ltd.*, 591 F.3d at 255 (citations omitted).

Of course, in determining whether a hostile work environment exists, a court must look at the totality of the circumstances, which includes consideration of the following relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

---

[3] Even if CSB knew "of Mr. Mawyer's inappropriate behaviors with other females" prior to the alleged incident with Plaintiff on Friday, December 11, 2009, it would not be liable for sexual harassment under Title VII unless and until (as discussed further in this opinion) there was some actual harassment on his part toward Plaintiff – not "merely crude behavior," *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008) – that "unreasonably interfere[d] with [Plaintiff's] work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), was "sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment," *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*), and regarding which CSB "failed to take effective action to stop," *id.* at 334. "Title VII requires a claimant to show more than just severe harassment in order to hold an employer liable for an employee's behavior." *Howard v. Winter*, 446 F.3d 559, 571 (4th Cir. 2006).

The factual allegation that CSB did not immediately fire Mawyer, or send him away, or transfer him, or punish him in some way to Plaintiff's satisfaction, is of no moment when considering whether Mawyer's actions on Friday, December 11, 2009, are imputable to CSB for purposes of Title VII. Nor does it matter that Plaintiff was dissatisfied with CSB's remedial response after the incident on Monday, December 14, 2009. "What is most important is that there were no further" incidents, "and 'when an employer's remedial response results in the cessation of the complained of conduct'" – and it is clear from the complaint that the conduct ceased – "'liability must cease as well.'" *Howard*, 446 F.3d at 565 (quoting *Spicer v. Com. of Va., Dept. of Corrections*, 66 F.3d 705, 711 (4th Cir. 1995); also citing *Mikels v. City of Durham*, 183 F.3d 323, 329-30 (4th Cir. 1999) (describing this principle as "most important[]")).

employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Still, when one turns to the further allegations regarding the incident on the following Monday, December 14, 2009, Mawyer's actions ("he abruptly reached out with his left arm and squeezed her right breast. . . . against her will") and CSB's response ("CSB did not react immediately by getting rid of Mr. Mawyer," but instead "transferred him to Charlottesville High School") were not "sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment." *Ocheltree*, 335 F.3d at 331. "As the Supreme Court has emphasized, 'not all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII.'" *EEOC v. Fairbrook Medical Clinic*, 609 F.3d 320, 327-328 (2010) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

The conduct alleged here, *i.e.*, all the conduct alleged here, regarding the incidents on both Friday, December 11, 2009, and Monday, December 14, 2009, does not reach the requisite level of severity or pervasiveness to constitute sexual harassment under Title VII.[4] Although Mawyer's

---

[4] I underscore that Mawyer's conduct was offensive. And, perhaps the second incident on Monday would not have happened if, upon learning of the incident on Friday, CSB had immediately removed Mawyer from Plaintiff's workplace. However, the allegation that CSB subjectively failed to act fast enough between a Friday and the following Monday is insufficient to constitute a violation of Title VII. And the factual allegation that CSB merely "transferred" Mawyer, rather than "immediately . . . getting rid of" him, does not matter.

In *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705 (E.D. Va. 2004), Plaintiff alleged that a "Shift Human Resources Supervisor" had her brought to his office, where he

> closed the door and asked Plaintiff to remove her work apron. She did. Defendant Clarke then asked Plaintiff how she would feel about dating an older man and how she would feel about going out with him. After Plaintiff responded that she had no interest, Defendant Clarke apologized to her and asked her for a hug. Plaintiff alleges that she consented to the hug and leaned her body into his. Defendant Clarke then allegedly told Plaintiff that he wanted to kiss her and proceeded to grab her buttocks, pulled her toward him, pressed his pelvic area into hers, and simulated the act of sexual intercourse. Plaintiff freed herself and

(continued...)

actions were criminal, and either of the defendants may be liable to Plaintiff under a state law theory, the allegations regarding Mayer's conduct simply do not constitute sexual harassment under Title VII.

"[W]hile no one condones boorishness, there is a line between what can justifiably be called sexual harassment and what is merely crude behavior." *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008). A claim of hostile work environment based on co-workers' conduct requires "that there existed an environment where [Plaintiff] found [her] working conditions altered and compromised on account of a severe or pervasive gender bias," and the Fourth Circuit's "cases have sought to distinguish between those situations that indeed present serious impediments to minority and female workers and those situations when human nature simply is not at its best." *Id*. at 228, 229.

---

[4](...continued)
left Defendant's office.

378 F. Supp. 2d at 710. Plaintiff "immediately reported the incident to her supervisor," and Plaintiff's shift manager and an Assistant Complex Human Resources Manager met with Plaintiff. *Id*. The Assistant Complex Human Resources Manager "informed Plaintiff that he would conduct an investigation and get back to her," and "[w]ithin one week to ten days," the Assistant Complex Human Resources Manager and the Complex Human Resources Manager met with Plaintiff and "allegedly informed Plaintiff that they determined that her charge was unfounded." *Id*. at 710-11. However, some time thereafter, "Defendant Tyson Foods terminated Defendant Clarke's employment after two other female employees alleged that he had sexually harassed them." *Id*. at 711. Nonetheless, regarding Plaintiff's hostile work environment claim, the court granted the motion to dismiss on the ground that "[t]he facts alleged are not severe or pervasive enough to create a hostile work environment." *Id*. at 712.

   In any event, Mawyer's conduct is not alleged to have occurred frequently enough (and I stress that Plaintiff's own allegations disclose that CSB did *not* allow it to go on unchecked) to support claims of a hostile work environment. *See, e.g.*, *E.E.O.C. v. R & R Ventures*, 244 F.3d 334, 337 (4th Cir. 2001) (supervisor made sexual comments to an employee every time the two worked together); *Patterson v. County of Fairfax*, 215 F.3d 1320 (Table), 2000 WL 655984, at * 4 (4th Cir. May 18, 2000) (Title VII is not violated when there were only a few incidents of sexually motivated behavior over a period of time); *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (observing that the plaintiff identified only four gender-based comments); *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753 (1996) ("'A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.'") (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)); *Spencer v. General Electric Co.*, 697 F. Supp. 204, 213 (E.D. Va. 1988) (supervisor engaged in sexual horseplay on a daily basis, which included physically sitting on employees' laps and touching employees in an intimate manner).

Mawyer's conduct was execrable, but the allegations regarding his actions and CSB's response thereto do "not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Title VII requires a claimant to show more than just severe harassment in order to hold an employer liable for an employee's behavior." *Howard*, 446 F.3d at 571. The first incident alleged here (a verbal comment and a gesture toward Plaintiff's breasts) was isolated; the second, escalated incident (actually squeezing Plaintiff's right breast) followed in quick succession (the very next business day); CSB took speedy action upon Plaintiff's report of the second incident; and there were no further events.[5] "[C]onsidering 'all the circumstances'" "objective[ly]" and "from the perspective of a reasonable person in the plaintiff's position," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23); *see also Ziskie*, 547 F.3d at 227, these allegations do not suggest that CSB allowed Plaintiff's workplace to be "permeated with 'discriminatory intimidation, ridicule, and insult,'"

---

[5] Returning to the question of imputability, the sum total of the allegations in the complaint do not state a hostile work environment claim imputable to CSB, given that the allegations indicate that CSB did, indeed, take remedial action when, after the incident on Monday, December 14, 2009, it "transferred" Mawyer from Plaintiff's workplace. I repeat that, for CSB to be liable for a hostile work environment claim based on Mawyer's actions, his conduct must be imputable to CSB. *Howard*, 446 F.3d at 565; *Ocheltree*, 335 F.3d at 331. And, in a case like the instant case, where the claimed sexual harassment is committed by a co-worker, CSB is liable only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 334. Here, the allegations disclose that CSB took effective action to prevent Mawyer from undertaking any further assaultive conduct against Plaintiff.

In a perfect world, action might have been taken against Mawyer after his "unsuccessful grab" at Plaintiff's breasts on Friday, December 11, 2009. However, even in a perfect world, Mawyer has due process rights, and CSB's response to the first incident, which is clearly not imputable to CSB, and did not create a hostile work environment, reasonably might not have been immediate. *See, e.g., Howard*, 446 F.3d at 571 ("once [defendant] received notice of [Howard's] specific allegations on November 20, 1996," the harassing co-worker "was immediately transferred to another floor and out of Howard's working group. . . . the district court noted that [defendant's] response was 'about the fastest [the court had] seen an employer do in a long time in these cases.'"); *see also Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705 (E.D. Va. 2004) (discussed in n. 4, *supra*); *Spicer v. Virginia Dept. of Cons.*, 66 F.3d. 705, 711 (4th Cir. 1996) ("the district court's conclusion that the employer failed to take remedial action either is an error of law, or, if interpreted as a finding of fact, is clearly erroneous. . . . we have never suggested that an employer must make the most effective response possible and we have consistently held that an employer is only liable for sexual harassment committed by its employees if no adequate remedial action is taken").

*Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank*, 477 U.S. at 65), or that the two incidents were "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *id.* (quoting *Meritor Savings Bank*, 477 U.S. at 67).

### IV.

For the stated reasons, I find that Plaintiff's allegations fail to state a claim of sexual harassment in violation of Title VII, and I will grant the motion to dismiss as to the Title VII claim. Regarding the state law claims against both defendants, I will decline, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over such claims, and I will dismiss them without prejudice.

An appropriate order accompanies this memorandum opinion.

Entered this 1st day of December, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE