IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SHEILA DAVIS,  *Plaintiff*,  v.  CITY OF CHARLOTTESVILLE SCHOOL BOARD, ET AL.,  *Defendants*. | CIVIL ACTION NO. 3:11-CV-00026  MEMORANDUM OPINION  NORMAN K. MOON  UNITED STATES DISTRICT JUDGE |

Plaintiff filed a complaint against the City of Charlottesville School Board (the "School Board" or "CSB") alleging, *inter alia*, that Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*., were violated when a co-worker, Warren Mawyer, assaulted her and the School Board allegedly failed to prevent Mawyer's conduct or to respond in a manner that Plaintiff found appropriate. I granted CSB's and Mawyer's motions to dismiss, finding that Plaintiff's allegations failed to state a claim of sexual harassment under Title VII against the School Board, and I declined, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over the state law claims against both defendants.

Thereafter, Plaintiff filed the following: a "Motion to File Amended Complaint" (docket no. 28); a "Motion to Seal Amended Complaint" (docket no. 30); and a "Rule 59 Motion to Amend"[1] (docket no. 32). My review of the motions and the proposed amended complaint does not dissuade me from my finding that Plaintiff has failed to state a claim under Title VII. Accordingly, I will deny the motions.

---

[1] Pursuant to Rule 59(e), this motion was timely filed.

# I.

## A.

A district court may not grant a post-judgment motion to amend the complaint unless the court first vacates its judgment pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006); *see also Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 470 (4th Cir. 2011).

> To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards. The court need only ask whether the amendment should be granted, just as it would on a prejudgment motion to amend pursuant to Fed. R. Civ. P. 15(a). In other words, a court should evaluate a postjudgment motion to amend the complaint "under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Laber*, 438 F.3d at 427; *accord Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: "[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (internal quotation marks omitted).

*Katyle*, 637 F.3d at 471.

Futility is the crucial factor here. I dismissed the complaint because Plaintiff's Title VII allegations regarding her co-worker's actions did not recount conduct so severe or pervasive that it altered the conditions of her employment and created an abusive work environment, and the allegations established that the co-worker's actions were not imputable to her employer. For the same reasons stated in my pervious memorandum opinion, Plaintiff's additional factual allegations do not state a claim against CSB that Plaintiff suffered sexual harassment in violation of Title VII, and to permit the amendment would be an exercise in futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (a court properly may refuse to allow leave to amend pleadings when the proposed changes would be futile).

My memorandum opinion regarding the motion to dismiss summarized Plaintiff's factual allegations as follows:

> Plaintiff is a woman who "was and is an employee of CSB." Mawyer is a man who "was an employee of CSB" on the relevant dates.
>
> On Friday, December 11, 2009, when Plaintiff and Mawyer were both working at Jackson-Via Elementary School, "Mawyer approached [Plaintiff] in the cafeteria and made an abrupt, highly inappropriate but fortunately unsuccessful grab for her breasts with his hands." Plaintiff "was frightened by the physical moves against her, believing that she was about to suffer an outrageous battery." Mawyer "then demanded to know whether [Plaintiff's] breasts are 'real' or not." Plaintiff "responded very negatively" and,
>
>> [r]ight after Mr. Mawyer's attempt to grab [Plaintiff's] breasts ended, the assistant principal of the school, Tracy Daniels, walked in. [Plaintiff] told Dr. Daniels what had just happened. Dr. Daniels did not indicate that she was going to do anything about it. And, to the best of [Plaintiff's] knowledge, Dr. Daniels did not do anything about it.
>
> On the following Monday, December 14, 2009, in the cafeteria, "Mr. Mawyer apparently slipped over to [Plaintiff], and while facing [Plaintiff], he abruptly reached out with his left arm and squeezed her right breast." Mawyer grabbed Plaintiff's breast "against her will." Mayer's actions "frightened her immensely," and Plaintiff "believed that she was the potential victim of a coming rape. . . ." Plaintiff struck Mr. Mayer out of "shock, and to stop the sexual attack and in her mind to prevent a potential rape. . . ."
>
> Plaintiff reported the incident to Dr. Daniels, and "explicitly referred to the earlier incident that she had told Dr. Daniels about on Friday." Plaintiff states her belief that "Dr. Daniels involved the school principal, ElizaBeth McCay," but that "CSB did not react immediately by getting rid of Mr. Mawyer," but instead "transferred him to Charlottesville High School."
>
> Plaintiff "swore out a warrant against Mr. Mayer," the "Commonwealth's Attorney prosecuted the case, and Mr. Mawyer eventually [pleaded] guilty to the assault and battery. . . ." Mawyer "has been ordered to stay away from" Plaintiff.[]
>
> Plaintiff "complained to the superintendent, Dr. Rosa Atkins, about the decision to keep this man employed, especially near high school girls who could be his victims." Plaintiff adds that she "has discovered since this time that CSB knew or should have known of Mr. Mawyer's inappropriate behaviors with other females before" he assaulted Plaintiff, and that CSB "failed to take appropriate action and enabled him to be in a situation to victimize her."

> Count I, against CSB, asserts that Plaintiff "suffered sexual harassment in violation of Title VII." Counts II, III, IV, and V assert against both defendants the torts of battery, assault, intentional infliction of emotional distress, and negligent infliction of emotional distress, adding that "CSB is vicariously and strictly liable pursuant to the doctrine of respondeat superior for Mr. Mawyer's torts." Count VI asserts "negligent retention" against CSB.

(Footnote omitted.)

The additional facts alleged in the proposed amended complaint are as follows:

- Paragraph 14 alleges that CSB violated its own harassment policy, as set forth in the Charlottesville City Schools Employee Handbook, when CSB failed "to immediately react and investigate" the initial encounter between Plaintiff and her co-worker on Friday, December 11, 2009, and waited until the following Monday, December 14, 2009, after further conduct had occurred.

- Paragraph 18 compares the sizes of Plaintiff and Mawyer, who "is a much larger person than" she is.

- Paragraph 22 adds that, when Plaintiff complained to the school superintendent about the decision to transfer Mawyer to another school, rather than terminate his employment, she did so "bitterly."

- Paragraph 24 alleges that, "[w]ell before Mr. Mawyer's attacks" on Plaintiff, Mawyer's supervisor at CSB had been told by one teacher that "Mawyer was lewdly and brazenly staring at her breasts," that this teacher did not want "Mawyer to come into her room any longer" because she thought he stared at her breasts, and that, for unspecified reasons, "multiple female teachers" had told Mawyer's supervisor that they did not want Mawyer to enter their rooms.

- Paragraph 25 asserts that Plaintiff's "anticipates" obtaining expert testimony in support of her further assertion that "CSB's response to [Plaintiff's] complaints and earlier complaints violated the basic standards of human resource management."

- Paragraphs 26 and 27 allege that CSB's harassment policy violated Equal Employment Opportunity Commission "enforcement guidance on the content of sexual harassment policies." Plaintiff asserts that CSB's policy fails to "contain a 'clear explanation of prohibited conduct,'" and that the policy does not "contain 'assurance that the employer will protect the confidentiality of harassment complaints to the extent possible.'" Plaintiff alleges that "[t]his failure . . . reflects a serious disregard for Title VII and the proper deterrence and handling of sexual harassment," and that this "disregard is further reflected by CSB's terrible lack of response to [Plaintiff's] and other complaints about

   Mr. Mawyer, which ultimately enabled Mr. Mawyer to sexually harass, assault and batter" Plaintiff.

- Paragraphs 28 and 29 assert that, although the incident on Monday, December 14, 2009, led to Mawyer being "(belatedly) fired and convicted" of a misdemeanor assault charge, "the principal of the school astonishingly allowed Mr. Mawyer in the building over the summer to work as an independent contractor." Although Plaintiff does not allege that Mawyer had any contact with her during this time, when the school was closed and she apparently was not present, she asserts that "[a]llowing a criminal and sexual harasser in the building . . . reflects a serious disregard for Title VII and the proper deterrence and handling of sexual harassment." She adds that "CSB knew of Mr. Mawyer's harassment and should have known he would have continued to harass. It failed miserably to take appropriate action."

- Paragraph 31 is redacted, and is the subject of the motion to seal, which I will deny, as explained elsewhere in this opinion. Suffice it to say that ¶ 31 raises personal information about Plaintiff. This information is absolutely immaterial to Plaintiff's Title VII claim.

  It would be futile for me to vacate my order dismissing the case and permit Plaintiff to amend the complaint, as Plaintiff's proposed amendments fail to state a claim of sexual harassment under Title VII against CSB. Plaintiff's amendments regarding her co-worker's actions still do not recount conduct so severe or pervasive that it altered the conditions of her employment and created an abusive work environment, and the proposed allegations still fail to suggest that the co-worker's actions are imputable to her employer. As I explained when I granted the motion to dismiss, in a case like this one, where the claimed sexual harassment was committed by a co-worker, CSB would be liable only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 334 (4th Cir. 2003) (*en banc*). As I explained in my previous opinion in this case, that did not happen here.

  Implicit in the instant motions and the proposed amendments is an argument that I should adopt a negligence standard that would require CSB to defend itself against sexual harassment allegations because CSB knew or should have known of a *likelihood* that Mr. Mawyer might engage

in boorish behavior, but I am unaware of any Title VII sexual harassment precedent that adopts such a standard.[2, 3] The standard, set forth in *Ocheltree*, is that an employer is liable for a co-worker's sexual harassment "if it knew or should have known about the *harassment*," *i.e.*, if the employer knew about *actual* harassment, not a likelihood that a co-worker might engage in harassment, *and* that the employer "*failed to take effective action to stop*" the harassment 335 F.3d at 334 (emphasis added).

B.

For the same reasons I gave in the memorandum opinion granting CSB's motion to dismiss, the proposed amended complaint fails to state a claim of sexual harassment under Title VII. Mawyer's actions were not sufficiently severe or pervasive to alter Plaintiff's work environment, his actions are not imputable to CSB, and the factual allegations show that CSB took effective action to stop Mawyer's conduct as soon as it knew of it.

A plausible hostile work environment claim involves offending conduct which was 1)

---

[2] In Virginia, negligence "is not actionable unless there is a legal duty, a violation of the duty, and consequent damage." *Marshall v. Winston*, 239 Va. 315, 318 (1990). The Supreme Court of Virginia has "consistently held that 'generally a person does not have a duty to protect another from the conduct of third persons.'" *Kellermann v. McDonough*, 278 Va. 478, 492 (2009) (quoting *Didato v. Strehler*, 262 Va. 617, 628–29 (2001)). "This is particularly so when the third person commits acts of assaultive criminal behavior because such acts cannot reasonably be foreseen." *Burdette v. Marks*, 244 Va. 309, 311–12 (1992). However, there is an exception to the general rule, where "a special relation exists (1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." *Id.* at 312. One "example of a special relationship is that of employer-employee with regard to the employer's potential duty of protecting or warning an employee." *A.H. v. Rockingham Pub. Co., Inc.*, 255 Va. 216, 220 (citing Restatement (Second) of Torts § 302B cmt. e (B) (1965)).

[3] Nor am I aware of any Title VII sexual harassment precedent that imports a take-the-eggshell-plaintiff-as-you-find-her standard that would make the allegations Plaintiff has redacted from her proposed amended complaint pertinent to her Title VII claim. *See, e.g., Vaughn v. Nissan Motor Corp. in U.S.A., Inc.*, 77 F.3d 736, 738 (4th Cir. 1996) (analogizing "the 'thin skull' rule of negligence law," and concluding that, while a "tortfeasor's duty of care is measured by the ordinary person," "a plaintiff's injuries may not be"; thus, if one breaches one's "objective duty of care," then one "must take [one's] victim as [one] finds her").

unwelcome, 2) based on Plaintiff's sex, 3) sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment, and 4) imputable to her employer. *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006); *Ocheltree*, 335 F.3d at 331. "[I]ndividuals are not liable under" Title VII. *Lissau v. Southern Food Service*, 159 F.3d 177, 180 (4th Cir. 1998). Subject to certain affirmative defenses, CSB could be held liable for a hostile work environment created by a supervisor, *see, e.g., Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998), but in a case like the instant case, where the claimed sexual harassment is committed by a co-worker, CSB is liable only "if it knew or should have known about the harassment and failed to take effective action to stop it," *Ocheltree*, 335 F.3d at 334.

For the purpose of considering Plaintiff's Title VII claim, the relevant factual allegations in the proposed amended complaint concerning the incident on Friday, December 11, 2009, are that Mawyer made an "unsuccessful grab" for Plaintiff's breasts and asked if her breasts were "real," and Plaintiff notified an assistant principal of these events. Although the amendments state that, "[w]ell before Mr. Mawyer's attacks" on Plaintiff, Mawyer's supervisor at CSB had been told by one teacher that "Mawyer was lewdly and brazenly staring at her breasts," that this teacher did not want "Mawyer to come into her room any longer" because she thought he stared at her breasts, and that, for unspecified reasons, "multiple female teachers" had told Mawyer's supervisor that they did not want Mawyer to enter their rooms, there are no allegations that *Plaintiff* had reported any prior experience with Mawyer, and Plaintiff does not allege any prior experience with Mawyer.

Although Plaintiff has amended her complaint to allege that other teachers had complained about Mawyer prior to her encounter with him on Friday, December 11, 2009, and the amendments support a conclusion that Mawyer's conduct was boorish, Plaintiff's amended allegations still do not indicate that she had suffered unwelcome, offensive conduct that was sufficiently severe or

pervasive so as to alter the conditions of her employment and create an abusive work environment, or that there was any conduct imputable to her employer. *Howard*, 446 F.3d at 565; *Ocheltree*, 335 F.3d at 331. As Plaintiff previously argued, "a Title VII plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss"; but even in a Title VII case, a complaint must contain "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)) (emphasis added), and that CSB knew or might have known of Mawyer's "potential dangerousness" does not suffice to make CSB responsible for sexual harassment under Title VII for Mr. Mawyer's initial "abrupt, highly inappropriate but fortunately unsuccessful grab for [Plaintiff's] breasts."[4]

To be sure, the totality of the circumstances includes consideration of the following relevant factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

---

[4] Even if CSB knew "of Mr. Mawyer's inappropriate behaviors with other females" prior to the alleged incident with Plaintiff on Friday, December 11, 2009, it would not be liable for sexual harassment under Title VII unless and until (as discussed further in this opinion) there was some actual harassment on his part toward Plaintiff – not "merely crude behavior," *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008) – that "unreasonably interfere[d] with [Plaintiff's] work performance," *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), was "sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment," *Ocheltree v. Scollon Prods.*, 335 F.3d 325, 331 (4th Cir. 2003) (*en banc*), and regarding which CSB "failed to take effective action to stop," *id.* at 334. "Title VII requires a claimant to show more than just severe harassment in order to hold an employer liable for an employee's behavior." *Howard v. Winter*, 446 F.3d 559, 571 (4th Cir. 2006).

The factual allegation that CSB did not immediately fire Mawyer, or send him away, or transfer him, or punish him in some way to Plaintiff's satisfaction, is of no moment when considering whether Mawyer's actions on Friday, December 11, 2009, are imputable to CSB for purposes of Title VII. Nor does it matter that Plaintiff was dissatisfied with CSB's remedial response after the incident on Monday, December 14, 2009. "What is most important is that there were no further" incidents, "and 'when an employer's remedial response results in the cessation of the complained of conduct'" – and it is clear from the proposed amended complaint that the conduct ceased – "'liability must cease as well.'" *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006) (quoting *Spicer v. Com. of Va., Dept. of Corrections*, 66 F.3d 705, 711 (4th Cir. 1995); also citing *Mikels v. City of Durham*, 183 F.3d 323, 329-30 (4th Cir. 1999) (describing this principle as "most important[]")).

with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Still, when one turns to the further allegations regarding the incident on the following Monday, December 14, 2009, Mawyer's actions ("he abruptly reached out with his left arm and squeezed her right breast. . . . against her will") and CSB's response ("CSB did not react immediately by getting rid of Mr. Mawyer," but instead "transferred him to Charlottesville High School") were not "sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment." *Ocheltree*, 335 F.3d at 331. "As the Supreme Court has emphasized, 'not all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII.'" *EEOC v. Fairbrook Medical Clinic*, 609 F.3d 320, 327-328 (2010) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

The conduct alleged in the proposed amended complaint regarding the incidents on both Friday, December 11, 2009, and Monday, December 14, 2009, still does not reach the requisite level of severity or pervasiveness to constitute sexual harassment under Title VII.[5] Although Mawyer's

---

[5] I repeat my earlier observation that Mawyer's conduct was offensive. And, perhaps the second incident on Monday would not have happened if, upon learning of the incident on Friday, CSB had immediately removed Mawyer from Plaintiff's workplace. However, the allegation that CSB subjectively failed to act fast enough between a Friday and the following Monday is insufficient to constitute a violation of Title VII. And the factual allegation that CSB merely "transferred" Mawyer, rather than "immediately . . . getting rid of" him, does not matter.

In *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705 (E.D. Va. 2004), Plaintiff alleged that a "Shift Human Resources Supervisor" had her brought to his office, where he

> closed the door and asked Plaintiff to remove her work apron. She did. Defendant Clarke then asked Plaintiff how she would feel about dating an older man and how she would feel about going out with him. After Plaintiff responded that she had no interest, Defendant Clarke apologized to her and asked her for a hug. Plaintiff alleges that she consented to the hug and leaned her body into his. Defendant Clarke then allegedly told Plaintiff that he wanted to kiss her and proceeded to grab her buttocks, pulled her toward him, pressed his pelvic area into hers, and simulated the act of sexual intercourse. Plaintiff freed herself and

(continued...)

actions were criminal, and either of the defendants may be liable to Plaintiff under a state law theory, the allegations regarding Mawyer's conduct simply do not constitute sexual harassment under Title VII.

"[W]hile no one condones boorishness, there is a line between what can justifiably be called sexual harassment and what is merely crude behavior." *Ziskie v. Mineta*, 547 F.3d 220, 228 (4th Cir. 2008). A claim of hostile work environment based on co-workers' conduct requires "that there existed an environment where [Plaintiff] found [her] working conditions altered and compromised on account of a severe or pervasive gender bias," and the Fourth Circuit's "cases have sought to distinguish between those situations that indeed present serious impediments to minority and female workers and those situations when human nature simply is not at its best." *Id*. at 228, 229.

---

⁵(...continued)
left Defendant's office.

378 F. Supp. 2d at 710. Plaintiff "immediately reported the incident to her supervisor," and Plaintiff's shift manager and an Assistant Complex Human Resources Manager met with Plaintiff. *Id*. The Assistant Complex Human Resources Manager "informed Plaintiff that he would conduct an investigation and get back to her," and "[w]ithin one week to ten days," the Assistant Complex Human Resources Manager and the Complex Human Resources Manager met with Plaintiff and "allegedly informed Plaintiff that they determined that her charge was unfounded." *Id*. at 710-11. However, some time thereafter, "Defendant Tyson Foods terminated Defendant Clarke's employment after two other female employees alleged that he had sexually harassed them." *Id*. at 711. Nonetheless, regarding Plaintiff's hostile work environment claim, the court granted the motion to dismiss on the ground that "[t]he facts alleged are not severe or pervasive enough to create a hostile work environment." *Id*. at 712.

In any event, the proposed amended complaint still does not allege that Mawyer's conduct occurred frequently enough (and I stress that Plaintiff's amended allegations still disclose that CSB did *not* allow it to go on unchecked) to support claims of a hostile work environment. *See, e.g., E.E.O.C. v. R & R Ventures*, 244 F.3d 334, 337 (4th Cir. 2001) (supervisor made sexual comments to an employee every time the two worked together); *Patterson v. County of Fairfax*, 215 F.3d 1320 (Table), 2000 WL 655984, at * 4 (4th Cir. May 18, 2000) (Title VII is not violated when there were only a few incidents of sexually motivated behavior over a period of time); *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (observing that the plaintiff identified only four gender-based comments); *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753 (1996) ("'A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.'") (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)); *Spencer v. General Electric Co.*, 697 F. Supp. 204, 213 (E.D. Va. 1988) (supervisor engaged in sexual horseplay on a daily basis, which included physically sitting on employees' laps and touching employees in an intimate manner).

Mawyer's conduct was execrable, but the amended allegations regarding his actions and CSB's response thereto do "not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Title VII requires a claimant to show more than just severe harassment in order to hold an employer liable for an employee's behavior." *Howard*, 446 F.3d at 571. The first incident alleged here (a verbal comment and a gesture toward Plaintiff's breasts) was isolated; the second, escalated incident (actually squeezing Plaintiff's right breast) followed in quick succession (the very next business day); CSB took speedy action upon Plaintiff's report of the second incident; and, although the amendments indicate that Mawyer was permitted back on the school grounds as an independent contractor, the amended allegations still do not suggest that there have been any further encounters between Plaintiff and Mr. Mawyer.[6]  "[C]onsidering 'all the circumstances'" "objective[ly]" and "from the

---

[6] Returning to the question of imputability, the sum total of the amended allegations do not state a hostile work environment claim imputable to CSB, given that the allegations indicate that CSB did, indeed, take remedial action when, after the incident on Monday, December 14, 2009, it "transferred" Mawyer from Plaintiff's workplace.  I repeat that, for CSB to be liable for a hostile work environment claim based on Mawyer's actions, his conduct must be imputable to CSB.  *Howard*, 446 F.3d at 565; *Ocheltree*, 335 F.3d at 331.  And, in a case like the instant case, where the claimed sexual harassment is committed by a co-worker, CSB is liable only "if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 334.  Here, the amended allegations disclose that CSB took effective action to prevent Mawyer from undertaking any further assaultive conduct against Plaintiff.

Although action might have been taken against Mawyer after his "unsuccessful grab" at Plaintiff's breasts on Friday, December 11, 2009, Mawyer nonetheless has due process rights, and CSB's response to the first incident, which is clearly not imputable to CSB, and did not create a hostile work environment, reasonably might not have been immediate, even if Mawyer's supervisor knew that other teachers in the school may have complained of his conduct, which allegedly included having stared at a teacher's breasts. *See, e.g., Howard*, 446 F.3d at 571 ("once [defendant] received notice of [Howard's] specific allegations on November 20, 1996," the harassing co-worker "was immediately transferred to another floor and out of Howard's working group. . . .  the district court noted that [defendant's] response was 'about the fastest [the court had] seen an employer do in a long time in these cases.'"); *see also Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705 (E.D. Va. 2004) (discussed in n. 4, *supra*); *Spicer v. Virginia Dept. of Cons.*, 66 F.3d. 705, 711 (4th Cir. 1996) ("the district court's conclusion that the employer failed to take remedial action either is an error of law, or, if interpreted as a finding of fact, is clearly erroneous. . . .  we have never suggested that an employer must make the most effective response possible and we have consistently held that an employer is only liable for sexual harassment committed by its employees if no adequate remedial action is taken").

perspective of a reasonable person in the plaintiff's position," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris*, 510 U.S. at 23); *see also Ziskie*, 547 F.3d at 227, the amended allegations do not suggest that CSB allowed Plaintiff's workplace to be "permeated with 'discriminatory intimidation, ridicule, and insult,'" *Harris*, 510 U.S. at 21 (quoting *Meritor Savings Bank*, 477 U.S. at 65), or that the two incidents were "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" *id.* (quoting *Meritor Savings Bank*, 477 U.S. at 67).

The proposed amended complaint fails to state a claim of sexual harassment under Title VII. Mawyer's actions were not sufficiently severe or pervasive to alter Plaintiff's work environment, his actions are not imputable to CSB, and the factual allegations show that CSB took effective action to stop Mawyer's conduct as soon as it knew of it. Because allowing the amendments would be futile, I will deny the motion to amend.

**II.**

The redacted portion of Plaintiff's proposed amended complaint is not relevant to the Title VII sexual harassment claim against CSB.[7] Furthermore, I have declined, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over any state law tort claims to which the redaction may be pertinent. Accordingly, I will deny Plaintiff's motion to seal the unredacted proposed amended complaint. Pursuant to this court's local rules, the Clerk of the Court will return the unredacted document to Plaintiff's counsel. *See* W.D. Va. Gen. R. 9(c).

---

[7] *See* n. 3, *supra*.

### III.

A motion under Rule 59(e) may be granted if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). "In general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Id*. (quoting 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 124 (2d ed.1995)). Such a motion "'may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment.'" *Id*. (quoting Wright et al., *supra*, § 2810.1, at 127–28).

Plaintiff asserts that I erred when I "did not indicate that the ruling was without prejudice to the Plaintiff's filing an amended complaint," that I "should have done so," and that I "should take this opportunity to clarify that [I] intended to do so and/or wish[] to do so now." However, when a party asserts that it moves "to correct a clear error of law or prevent manifest injustice," *Pac. Ins. Co.*, 148 F.3d at 403, the motion should be denied if the challenged order was "legally correct and did not work a manifest injustice," *United States v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). "'Mere disagreement does not support a Rule 59(e) motion.'" *Id*. (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

Plaintiff quotes *Ostrzenski v. Seigel*, 177 F.3d 245, 252 (4th Cir. 1999), in support of her argument that I "should not have dismissed the complaint with prejudice without permitting [her] an opportunity to amend." But in that case, the Fourth Circuit observed – en route to affirming the district court's dismissal on the basis of absolute quasi-judicial immunity under Maryland law, *i.e.*, a "ground supported by the record," but "not the basis relied upon by the district court" – that the district court should have permitted the amendment because determining whether Ostrzenski's

factual allegations regarding his false light invasion of privacy claim met the "highly offensive" standard under Maryland law required the review of a document that "was not incorporated into the complaint," and since Seigel had "not yet answered," the document was "not before the court." *Id*. On appeal, Seigel had asserted "that the allegations contained in Ostrzenski's complaint do not '"set forth enough details so as to provide [him] and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery."'" *Id.* (citations omitted). Quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360-67 (2d ed. 1990), the Fourth Circuit observed that

> a dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint*. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a <u>formal defect</u> in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

*Ostrzenski*, 177 F.3d at 252-53 (underscore added).  Here, however, Plaintiff's complaint and proposed amended complaint do not suffer from any "formal" defect; rather, the allegations do not suggest that Mawyer's actions were sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive work environment, or that his actions were imputable to CSB, or that CSB failed to take effective action to stop Mawyer's conduct as soon as it learned of it. As I have already discussed, I find that the amendment would be futile. *See Foman*, *supra*, 371 U.S. at 182 (a court properly may refuse to allow leave to amend pleadings when the proposed changes would be futile); *see also Ostrzenski*, 177 F.3d at 253 (same; citing *Foman*, 371 U.S. at

182). Accordingly, I do not see any clear error or manifest injustice in having dismissed her Title VII claim with prejudice.[8]

### IV.

For the stated reasons, Plaintiff's motions will be denied. An appropriate order accompanies this memorandum opinion.

Entered this ___7th___ day of May, 2012.

                                                                NORMAN K. MOON
                                                                UNITED STATES DISTRICT JUDGE

---

[8] The memorandum opinion explained and the accompanying order explicitly noted that Plaintiff's state law claims against both defendants were dismissed without prejudice because I declined, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over those claims. Plaintiff's "Rule 59 Motion to Amend" asserts that "[t]his is clear error" because "Mawyer's Rule 12(b)(6) motion did not go to Title VII" (adding that Mawyer himself "is not subject to Title VII under current law"), and thus "[t]he Court's Order and Opinion and the motions do not logically match." *See* docket no. 33, ¶ 12.

    A district court is not constrained by a litigant's style of pleading or request for relief. *Hamlin v. Warren*, 664 F.2d 29, 30 (4th Cir. 1981) ("A federal court has the inherent power to fashion appropriate relief. It is not constrained by the pleader's request for relief."). As I declined to exercise supplemental jurisdiction over the state law claims against Mawyer, against whom there were *only* state law claims, I granted Mawyer's motion to dismiss without prejudice to those claims. I do not see error in having done so, as the dismissal creates no prejudice to Plaintiff's ability to proceed with those claims. I further note that Plaintiff does not propose how the order should be amended, only that it should be. In my view, her proposal presents a "'[m]ere disagreement,'" which "'does not support a Rule 59(e) motion.'" *United States v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).